Yes, Your Honor. I would like to reserve two minutes. Two minutes? Okay. Very good. Good morning, Your Honors. May it please the Court, Arwin Swink appearing on behalf of the petitioner Feng. This case presents one simple question. Can the Board of Immigration Appeals deny an application for protection under the Convention Against Torture without considering any of the evidence of human rights abuses in the record before it? It cannot. 8 CFR Section 1208.16c3 governs all applications for withholding of removal under the Convention Against Torture and expressly states that when addressing whether it is more likely than not that an applicant will be subjected to torture in the future, the immigration judge or the Board of Immigration Appeals must consider all evidence relevant to the possibility of future torture, including evidence of gross, flagrant, or mass violations of human rights in the country of proposed removal. I want to be sure I understand. Your comment was with respect to the BIA, not the IJ. Is that correct? Yes, Your Honor. Here, the Board of Immigration Appeals adopted the immigration judge's decision, and thus the Court must look to the immigration judge's decision. Right. So but you're saying that they didn't consider any of the facts. The IJ clearly did go over an extensive record. Do you agree with that? I would agree that the IJ covered an extensive record of testimony. I would definitely not agree that the immigration judge considered any of the evidence of documentary evidence submitted in this case. So your position is that the oral testimony was considered but no documents were considered? Yes, Your Honor. And on what do you base that? Well, looking at page 66 of the record, the immigration judge quotes the standards that she is bound to apply, yet at no other point in her decision does she actually discuss the evidence of record. No discussion of the Department of State country report. That doesn't mean she didn't consider it. It just means she didn't refer to it, right? That would be arguable if she had given any indication that she had considered it. But in fact, the IJ makes no reference to it whatsoever. In fact, the IJ's statement that quoting the correct legal standard is aside from a note on page 64 and 65 of the record that such documents had been submitted. Are you asking us to adopt a standard that if an IJ doesn't refer to a document that there's a presumption that he or she didn't consider it? No, Your Honor. Absolutely not. The IJ is not required to refer to each piece of evidence before it. But the IJ must give at least some indication that the evidence has been read and reviewed and considered. Isn't – doesn't our case law and the regulations say just the opposite of what you've been talking about, and that is that the IJ is presumed to have considered the record before him or her? No, Your Honor. It does not. I would direct the Court's attention to the government's citation to Almagazar v. Gonzalez at 457 F3rd 915. That's a 2006 case. There, the Court found that the IJ's statement that the Court had considered all of the evidence, documentary and testimonial, was sufficient to note that the IJ had considered such evidence. And the Court, of course, clearly explained that the IJ is not required to discuss every piece of evidence, but the IJ is still required to consider the evidence. Here, there's simply no indication whatsoever that the IJ did so. Significantly, that evidence shows substantial human rights violations occurring in China at this time. I would direct the Court's attention to page 197 of the record, noting that police and other elements of the security apparatus employed torture and degrading treatment in dealing with detainees and prisoners. Senior Chinese officials acknowledged that torture and coerced confessions were chronic problems. The IJ gives no indication that she noted this chronic torture and systematic abuse of detainees. But in the 1991 hearing, he didn't mention any torture at all. Yes, Your Honor, that's correct. Unfortunately, Mr. Feng was never asked what the conditions of his detention were like during his 1991 hearing. So you're saying, but he has the burden of proof, doesn't he, to show that he's eligible? Yes, Your Honor, he does. And wouldn't torture be an element that he would have to prove under any event? No, Your Honor. Past torture is one element to consider. And here, the IJ committed additional legal error in failing to consider the past torture.  tortured in the past, Mr. Feng, had been tortured in the past. This goes to the immigration judge's lack of a credibility finding. Specifically, at page 70, the immigration judge noted that the court really, quote, does not have any idea what to believe. Essentially, the immigration judge just threw up her hands and failed to make an assessment of the submitted country conditions regarding torture. That is legal error, which this Court must reverse. I would also direct this Court's attention to the decision Lafayette v. Attorney General at 478 F. 3rd 158. That's a 2007 decision. There, the Board's decision did not reflect any consideration of evidence relevant to the applicant's petition for protection under the Convention Against Torture. The Lafayette Court noted that a decision-maker such as the IJ must actually consider the evidence and argument that a party presents. An IJ decision that flatly ignores the grounds presented by the petitioner fails to furnish the Court of Appeals with a basis for its particular decision. That's in Lafayette at page 164. But that's precisely what the immigration judge did here. Under Ventura, this Court is not permitted to consider that evidence in the first instance, and so remand is appropriate in this circumstance. Regarding the credibility decision, the immigration judge was entirely vague and ambiguous, although she raised certain concerns. She didn't find him incredible. That's correct, Your Honor. So we take the record as if he were a credible witness and then look at the story he told to see whether it holds together sufficiently, I guess. Yes, Your Honor. Is that right? Because the immigration judge did not make an explicit credibility finding, Mr. Feng's testimony must be accepted as proven. And that's all of his testimony. Yes, Your Honor. And for that point, I would just reference the Court's decision at Shoa-Farah v. INS, 228F3-1070, noting that the law of this Court does not accept implicit credibility decisions. Here, the I.J. had concerns and questions, but – and she stated that those questions hadn't been adequately resolved. But, as again noted, she just threw up her hands and failed to make any sort of expressed determination whatsoever. In such circumstances, the Court must presume that the applicant's testimony is true and proceed accordingly. Here, because Mr. Feng presented credible testimony – Your two-minute mark is there. Do you want to preserve that for rebuttal? Thank you. Very good. We'll now hear from Mr. Hausman. Good morning, Your Honors. May it please the Court. My name is Alan Hausman. I'm an attorney with the Office of Immigration Litigation, the Justice Department in Washington, for the Respondent, the Attorney General. I would like to address, I think, the two key points that opposing counsel has raised before the Court. In anticipation of appearing before Your Honors for the oral argument, we submitted a 28J letter pointing out several recently decided cases since the submission of the answering brief. I believe that two of them are significant and have significant bearing on the decision that the Court should reach in this case. In the Almagar – Almagar's – well, Almanzar case, which, if Your Honors need to cite, 457 F. 3rd, 915, I would point to the Court to page 923, where the Ninth Circuit said that merely because there is evidence of torture in Yemen doesn't mean that this particular alien petitioner will be tortured in Yemen. I think that is the circumstance here. I think that's the point that the immigration judge was making in her decision. I agree with Petitioner's counsel that the immigration judge did not make an adverse credibility finding. I think that the Court has to accept, the Board accept, and the Court has to accept the credibility of the alien in his testimony. The problem the immigration judge had was, as she pointed out in detail, at the various points at which he testified or submitted a sworn affidavit, the testimony varied. And that basically the immigration judge said, I've listened to several different versions with several different dates of the critical events, and I don't know what to believe. And therefore, she said, and it appears at page 70 of the administrative record and page 71, which I think are really critical to understanding her decision, she said that since I don't know what to believe from the various versions that I've heard, and she describes the versions, I'm going to have to base my decision today on the testimony that was presented. And then she goes on to describe how the testimony contains inconsistencies, and therefore, while she wasn't saying that she doesn't believe the testimony, she said the testimony hasn't provided sufficient guidance to arrive at a decision. And since there wasn't sufficient guidance, the Petitioner failed to meet his burden of proof. She did comment in one's very significant respect about the testimony, and she said that Mr. Feng's testimony was speculative as to whether or not he would be tortured upon return. The immigration judge accepted the fact that when he got back to China, he would be detained by the Chinese officials, and that undoubtedly they would question him why he had been outside the country for ten years when he had a permit to go visit Peru for one year, and that they would question him about that. But Mr. Feng goes on to say, well, what they're going to ask me about is whether I was a supporter of the student movement, and there is no evidence to support his speculative belief. So what we have here is the distinction between what are the facts, and the facts the immigration judge doesn't dispute, that he was arrested at some point, he was detained at some point for 15 days, he was beaten during the period of detention, he was deprived of food for five days. She doesn't dispute that. What she does is she arrives at different inferences about what will happen when he returns to China. And we believe that the record supports the inferences drawn by the immigration judge, and that the petitioner has failed to cite any evidence in the record, be it in the country reports, be it in the testimony, that would compel a reversal of the immigration judge's inferences, and therefore her decision. The second case that we've cited is Lolong, which is the en banc decision involving country conditions and the consequences of those country conditions for, in Indonesia, for Indonesians of either Chinese or Chinese ancestry or Christian religion. And what the Court pointed out in the majority decision, which is at 484 F3rd 1173, and then specifically at pages 1179 through 1180, is that even though we have a panoply, background information, which shows terrible conditions, violations of human rights or discrimination and persecution of a particular group of people, it doesn't excuse the individual asylum seeker from presenting some evidence to show that he or she would be victimized in the context of that background information. And so, while the country conditions and the record evidence in this hearing show that there are terrible conditions in Chinese jails, and that Chinese individuals are tortured by the police, there's no reason to believe that the police or the officials in China have any particular interest in Mr. Feng. I mean, he has repeatedly testified at various points that he didn't know why he was arrested. At one point he said he was looking at a car, and he had different explanations at different points. He simply failed to provide enough evidence to convince the immigration judge that he is – it is more likely than not that he will be tortured in China. And the Petitioner has certainly not pointed to anything in the record, country conditions, testimony or any other evidence that would compel a reversal of the IJ's finding. If the Court has no questions, I'll stop. Roberts. Thank you very much. Thank you, Your Honors. Do you want to use your rebuttal time, Ms. Swink? Thank you, Your Honors. The government has referenced this Court's decision in Lelong, but Lelong is materially distinguishable from this case in that in Lelong the Petitioner presented no evidence – and I'm quoting from the decision here at page 1173 – no evidence that she has been or is likely to be specifically targeted. In fact, Ms. Lelong did not make any argument whatsoever that she feared being individually targeted. Here, Mr. Feng has a very persuasive argument that he has been and will be in the future individually targeted. He was subjected to past torture personally, individually. He additionally contributed money to support the democracy movement, participated in demonstrations, and purchased over 10,000 copies of a biography which was subsequently banned and confiscated by the Chinese authorities. Moreover, Mr. Feng has participated in annual commemorations of the massacre in Tiananmen Square since being here in the United States. Now, the immigration judge recognized that Mr. Feng will be interrogated and questioned upon his return to China. So the government's argument that he will not be subjected to any sort of torture is entirely contingent on Mr. Feng's presumed ability to withstand this questioning and interrogation when the record demonstrates – and this is at page 286 – that police and investigators still routinely use torture to extract confessions. He's a man with a record of supporting the democracy movement who's been tortured in the past on the basis of that, and this record contains substantial evidence of gross, flagrant, and mass human rights violations by the Chinese government. Because of the immigration judge's failure to adequately consider this evidence and the past torture, I think a remand is necessary. Thank you, Ms. Swink. And thanks to both Ms. Swink and Mr. Hausman. The case of Feng v. Mukasey is submitted. We will next hear the case of Yao v. Mukasey. Good morning. May it please the Court, Emmanuel Nguyen, 1-4, Mr. Yao.
judges: Canby, Thompson, Smith